Mr. Thompson is here in person and we have Ms. Greenwald on the phone. There she is. Can you hear me? I've actually been able to get an internet connection, Your Honor, so I'm actually on video, if you can hear me. Yes, we can. That's great. So I'm up on video now through my hotspot in my cell phone because Comcast has gone down. Okay. Well, I'm glad to see you and we'll go ahead and proceed with Mr. Thompson's opening argument. Good morning and may it please the Court. My name is Michael Thompson and I represent the defendant appellant, Keith Brown, in this case. In large part, the parties here agree on the law that controls the issues. In large part, we agree on what the underlying evidence showed at the trial. But where we disagree is on the rules of logic and what chain of reasoning it would be rational to draw from that evidence. In this case, Mr. Brown testified on his own defense at the original trial in which a hung jury resulted. He testified that he was on the phone at the time of his arrest with a specific individual. That was his fiancee at the time, Rose Reeves, and that she was in custody at Cook County Jail at the time. This is an answer that he gave on cross-examination when asked who he was on the phone with by government counsel. And during that same cross-examination, he admitted and agreed that if he was on the phone with Rose Reeves from Cook County Jail, there would be a recording of that phone call as he knew that all calls with inmates at Cook County Jail were recorded. This was a spontaneous answer he gave on cross-examination when attempting to remember who he was on the phone with at the relevant time. Now, he was later indicted for perjury and for obstruction of justice. He was for making that statement when it was revealed that although he did have a phone call with Rose Reeves on the night that he was arrested, it concluded approximately 15 to 20 minutes before he was arrested. But at the time he gave that statement, there was no reason, that under oath statement, there was no reason for him to make up any identity of a person that he knew could be definitively proven to be false because he knew that any such call was recorded, would have the time recorded, and the government could easily access it to prove it false. Now, at the second trial, the retrial for the underlying gun offense and the trial for the obstruction and perjury count, Mr. Brown testified again. He testified that he was in fact still, that it was his memory that he was on the telephone behind the barbershop at the time of his arrest, but that he simply was confused about who he was on the phone with because of the timing. But Mr. Thompson, the first trial when Mr. Brown was talking about who he was speaking with, the details would seem to add credibility to his recollection. So in other words, if he just said, oh, you know what, I don't know who I was talking to. I was talking to someone, and I don't really know exactly when I was talking to the person or what we were talking about. I don't remember the phone number that the calling came from. In fact, I don't even have the phone anymore. One would think that that would be a less convincing testimony or recount than what he chose to say, which is that he recalled he was talking with his girlfriend, and he recalled that his girlfriend was calling him from the county jail. And so the details do matter, right? Well, they might matter, but to the extent they do matter, they matter in a way that cuts against the finding that he was intentionally lying because if he wanted to make up a story about who he was talking to, he could have said anything. He could have said it was his friend that he only knew by a nickname and didn't have his number anymore. He could have said it was his mother. He could have said it was anybody at all. But he chose a specific person that was someone he knew the government could immediately prove whether he was telling the truth or not because the call would have been recorded. If he was going to lie, there was no reason for him to tell that lie. So the fact that that is what he chose to say demonstrates that the only reasonable thing to conclude is that he was trying to tell the truth. He was trying to remember what happened. In fact, he did talk to Ms. Reeves that day from the Cook County Jail on a recorded call. He was just off about the timing of when that call was because it was a couple of years after the incident occurred by the time it went to trial. He misremembered the timing of the call. He tried to answer the government's question. This wasn't a story he made up on direct examination to try to make his account sound more believable to the jury. He did his best to respond to the question that was posed to him. And when he did that, he gave an account that if false, could easily be proven to be false. So if he was attempting to mislead anybody, if he was attempting to lie to the jury to make himself sound more credible, he could have said something that wouldn't have easily been disproven. So the fact that he said something that could be shown to be false leads to a chain of reasoning that what he was trying to do was remember years later. And when he testified again at the second trial, the one this appeal arises from, he said that that's what happened. And the jury didn't have to credit that testimony and neither does this court, of course. But what he said made sense, that he attempted to remember what happened. He did his best to tell the truth. And at that time, what he said was, well, I remember being on the phone, but I don't remember who it was with. Again, he didn't make up somebody. He didn't say it was my friend with this nickname on the street. He just said, well, it was somebody, and I don't know who. And the only reason to give testimony like that is if you're trying to remember and trying to tell the truth. Well, you just said, though, that the jury was entitled to discredit that part of his testimony. Of course. And if that's true, then you lose because that means it's rational to infer that he was lying. I don't agree that if the jury disregarded that testimony, they have to convict him, though, because there still has to be some evidence to show that the statement from the first trial was intentionally false. And that doesn't exist in the record. Disbelieving him about his explanation isn't the same as the government providing evidence to show his state of mind at the first trial, to show that he was intentionally lying. And that evidence doesn't exist in the record, and frankly, it doesn't hold up to logic. I thought the chain of reasoning is that the whole story about being on the phone at the time of the events in question here was a lie, whether he was on the phone with his fiancée, as he originally testified, falsely, or whether he was on the phone with some unnamed other person, as he testified in the second trial. That was all part of it? The whole thing is a concoction intended to evade responsibility. That is certainly the government's theory, Your Honor, but that wasn't something that was necessarily part of all of the charges, at least. There was specific statements charged for the perjury counts in this case, and those all included, well, I was on the phone with Rose Reeves. I knew it was recorded. It was on the county jail. That was what happened at the time that the police showed up when I was out in the back lot. So the jury didn't agree that the government had established that he had the charged firearm. There was a hung jury in both cases. Oh, this is your inconsistent verdict argument. Well, I'm not saying that there has to be an acquittal on the perjury and obstruction counts because there was an acquittal on the first count. The government's right that there is no inconsistent verdict means that the inconsistent one has to be overturned. That doesn't exist. But we know what the jury believed about the gun charge when they were evaluating the charges about the false statements and perjury. They believed that the government hadn't established the truth of the gun possession but apparently believed that Mr. Brown nonetheless testified falsely about what he was doing at the time the gun was possessed by somebody. And I think that chain of reasoning doesn't hold up to logic. It shows that they weren't behaving as a rational jury because a rational jury would not find that he lied about something that they didn't believe he actually did. And if there are no further questions at this time, I would reserve the remainder for rebuttal. Thank you. All right, Ms. Greenwald. Good morning, Your Honors. Viewing the evidence in the light most favorable to the verdict and keeping in mind that the credibility determinations are within the province of the jury, the evidence is more than ample to sustain the jury's finding that the defendant knowingly and intentionally gave false evidence. And as the district court in this case found—excuse me. As the district court in this case found, there were three sources of evidence to disprove, to support the jury's verdict. The first one was the officers. The officer testified that when he came into the barbershop, the defendant immediately stood and ran, and then he chased him. So the defendant's testimony that he wasn't in the barbershop when the officers entered, that he was in the back area, that whole alibi, that was intentional. You're not mistaken about where you are when the officers entered. So that's point one in the first source. And then secondly, the whole story that came out at the first trial, the whole false story with all of its details. And forgive me because I am at a disadvantage here without having access to the Internet, and I didn't print out the briefs and the record, so I was relying on that. But my recollection is, and if I'm wrong, so I'm asking the court to double-check. But my recollection is, this wasn't a cross-examination testimony. It was on direct. But if I'm mistaken about that, it's of no moment because it's still false testimony. But I would add that in giving this testimony, this incredible testimony that, incredible in the sense that it's false in all these respects, but also false in a way that completely exculpates him and provides an alibi. So he'd have to be accidentally wrong about the time of the call, accidentally wrong about who he was talking to, accidentally wrong about the phone he was using because the evidence shows he used Ms. Reeves' phone to talk to her, not his own. The jury could certainly find, as the district court found, that it was incredible that he was just mistaken as to all those things and just coincidental that having been mistaken about all those things, it created an absolute alibi. And to add to that, to bolster to their finding there, was the fact that he never sought to get these records. As we argued to the jury, you know, it cuts both ways. The defense tries to argue that he wouldn't have a reason to lie because there were these recordings. Well, the fact that there were these recordings gave him every reason to get them if he was telling the truth. And though a witness from the jail testified, defendants do get access to these records. So all of this, as well as when his story falls apart as testimony at the third trial, just lends itself to show the whole thing was a fraud and a fake to start with. So for all these reasons, and I would add one other point, which is that basically all the arguments that defense counsel just presented to you, they presented to the jury. The jury heard it, the jury considered it carefully as its verdict show, and it came to the conclusion that this defendant was intentionally lying. So for all these reasons, unless the court has any questions. What's your theory on the split verdict? On the split verdict, it would be, first of all, that the jury, you know, as defense counsel conceded and the law is clear, inconsistent verdicts wouldn't matter. But it's not even clear the verdicts are inconsistent here. As a district court explained, the jury could have believed, totally believed the officers when they said this was the man we chased, this was the man that ran out. He wasn't, we didn't see him on the phone in the backyard, but yet had questions, or at least certain of them had questions about seeing him actually throw the gun over the fence. And I would add in this case, that particularly lends itself because remember, in this case, there's also the ammunition charge that they did convict him of. And for that charge where he threw something into the bed of a truck, there were like five video cameras. That was all on video. So this might have been a jury where some of the jurors did expect that kind of evidence and weren't going to just rely on the officer's visual during a very hectic time. So the government's position on this would be there are no inconsistent verdicts here. And even if there were, as a matter of fact, it just shows the care the jury took. And as a matter of law, it's irrelevant. Thank you. So if the court has no further questions, the government would respectfully request that you affirm his conviction and sentence. Thank you. Mr. Thompson. Your Honor, with regard to the defendant having the ability to obtain the records from Cook County Jail, first of all, he has no duty to do that. To him, it wasn't relevant who he was on the phone with at that time, at least in his own mind. But also what we know from the evidence the government introduced during the second trial here is that even if he had asked for the records from Rose Reeves, this wouldn't have shown up. Ms. Reeves called him from another inmate's account at the jail. So if he subpoenaed Rose Reeves' records, they wouldn't have supported his story even though he did, in fact, have a call with Rose Reeves that night. So the fact that he didn't produce those records is kind of irrelevant to the issue here. With regard to whether or not he said it on direct or cross-examination, I don't have the full transcript in front of me either, but I know that what was charged in the perjury count was what he said on cross-examination when he was asked who you were on the phone with. He said, my fiancée. And the follow-up question was, who is that? And he gave the name Rose Reeves. So that statement was given on cross-examination as charged in the indictment. And I think there's no reason for him to give that statement, once again, unless he believed it to be true at the time, because if he knew it was false, then he also knew it could be disproven. And so I think it is irrational to believe that he intentionally misled the jury with regard to the charge statements in the indictment. If there are no questions, we will ask that the conviction be overturned. Thank you. Thank you. Our thanks to both counsel. The case is taken under advisement. Thank you. And our next case for argument this morning is Sheba Doris.